# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| CENTRAL STATES, SOUTHEAST AND SOUTHWEST AREAS PENSION FUND, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> SUN MARSH, LLC., et al., <br><br> Defendants. | Case No. 18 C 2131 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

The failure of the Marsh retail food chain has generated a good deal of complex litigation, including the present case. The question before the Court is whether the present lawsuit, an attempt to collect unpaid pension fund contributions from certain entities affiliated or under common control with Marsh, should proceed here as a stand-alone lawsuit or should instead be transferred to the District of Delaware, where certain other lawsuits arising out of Marsh's failure are pending.

Marsh Supermarkets, LLC and Contract Transport, LLC, which are not parties to the present case, were bound by collective bargaining agreements with a union affiliated with the International Brotherhood of Teamsters. These agreements obligated Marsh Supermarkets and Contract Transport to make contributions to the Central States, Southeast and Southwest Areas Pension Fund on behalf of certain of their employees. In 2012, the Fund made a determination that the two entities had effected a withdrawal from the Fund and incurred withdrawal liability of over $61 million. The Fund

gave the entities the option of paying this liability in 240 monthly installments. These payments were made for several years but stopped in the early part of 2017.

On May 11, 2017, Marsh Supermarkets, Contract Transports, and other affiliated entities filed a petition for bankruptcy in the U.S. Bankruptcy Court for the District of Delaware. The Fund has asserted, in the bankruptcy proceeding, a claim for the withdrawal liability.

Also on May 11, 2017, Sun Capital Partners IV, LP, an entity under common control with the withdrawn entities, filed a declaratory judgment action against the Fund in the U.S. District Court for the District of Delaware, seeking a determination that it is not liable for the withdrawal liability. In late July 2017, the Fund filed in that case what was plainly a compulsory counterclaim against Sun Capital Partners IV, LP, alleging that it and two related entities (Sun Capital Advisors IV, LP and Sun Capital Partners IV, LLC) are, in fact, liable for the withdrawal liability because they were under common control with the withdrawn entities.

On August 3, 2017, the Fund filed in this district a lawsuit against Marsh Group Holding, LLC; MSH Holding, LLC; VPS Convenience Store Group, LLC; VP C-Store Real Estate Holding Corp.; VP C-Store Finance Holding, LLC; and Marsh Real Estate SPE, LLC. In that lawsuit, which is assigned to Judge Edmond Chang, the Fund alleges that the defendants are liable for the withdrawal liability because they were under common control with the withdrawn entities. Judge Chang entered a scheduling order that, among other things, set a deadline of March 5, 2018 for amending the pleadings and adding parties.

The Fund filed the present lawsuit on March 23, 2018. The Fund alleges that the

2

twenty-two named defendants are likewise liable for the withdrawal liability because they were under common control with the withdrawn entities. The Fund says that it learned of these defendants after filing the lawsuit before Judge Chang, and by the time it was able to file suit the deadline for amending the pleadings and adding parties in that lawsuit had passed. The defendants named in the present suit fall into two separately-represented groups: three are referred to as the Sun defendants, and the other nineteen are referred to as the WOC defendants.

After the Fund filed the present suit, the defendants in the lawsuit before Judge Chang moved to have the present case reassigned to him as a related case. The Fund and the WOC defendants both opposed the motion, partly because discovery in the case before Judge Chang was set to close. Judge Chang denied the motion.

In May 2018, the WOC defendants and their parent company filed, in the District of Delaware, a civil RICO lawsuit against the other defendants in the present suit, the defendants in the suit before Judge Chang, and the counterclaim defendants in the Delaware withdrawal liability case. In the civil RICO case, the WOC defendants allege that they were fraudulently induced into entering into a 2015 agreement to purchase various Sun entities. The WOC defendants contend that the parties they have sued engaged in a fraudulent scheme to extract millions of dollars from Marsh and then bankrupt it, leaving Marsh unable to pay the withdrawal liability despite representing that the proceeds of the sale would be used for that purpose.

The WOC defendants have moved to transfer the present case to the District of Delaware under 28 U.S.C. § 1404(a), relying on three main factors: the fact that that the Funds previously filed a claim against other Sun entities in that district to collect the

3

withdrawal liability; the prospect of consolidation with other related litigation in that district; and a contention that dockets in this district are highly congested and dockets in the District of Delaware are not. Both the Fund and the Sun defendants oppose transfer.

## Discussion

Section 1404(a) says that "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). To obtain a transfer under section 1404(a), the moving party must demonstrate that the proposed transferee forum is "clearly more convenient" than the forum where the plaintiff filed the case. *Heller Fin., Inc. v. MidWhey Powder Co.*, 883 F.2d 1286, 1293 (7th Cir. 1989); *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219–20 (7th Cir. 1986). "Where the balance of convenience is a close call, merely shifting inconvenience from one party to another is not a sufficient basis for transfer." *Research Automation, Inc. v. Schrader–Bridgeport Int'l, Inc.*, 626 F.3d 973, 978 (7th Cir. 2010).

In this case, the Fund chose its home forum in which to file the present suit. Courts ordinarily give substantial weight to the plaintiff's choice of a forum, particularly when, as in this case, it is the plaintiff's home forum. *See In re Nat'l Presto Indus., Inc.*, 347 F.3d 662, 664 (7th Cir. 2003); *cf. Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 255–56 (1981) (common law forum *non conveniens* doctrine). "'Unless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed.'" *In re Nat'l Presto Indus.*, 347 F.3d at 664 (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947)). The WOC defendants say that the Fund previously chose the District of

Delaware, but that is a considerable overstatement, to say the least. The Fund was named as a defendant in a declaratory judgment action there, and it filed what was almost certainly a compulsory counterclaim against defendants not named in the present suit. The Fund's filing of a compulsory counterclaim in a case in which it was sued can hardly be characterized as a choice.

The WOC defendants' principal argument in favor of transfer is that it would serve the interests of justice, for two reasons: the Northern District of Illinois "has one of the highest caseloads per judge in the nation," and if transferred to the District of Delaware, the case could be consolidated with related litigation already pending there. WOC Defs.' Mot. at 8. The first argument is based on a misunderstanding of the statistics upon which the WOC defendants rely; the second argument does not hold water.

The WOC defendants contend, citing published caseload statistics, that as of March 30, 2018, this district has "788 pending cases per judgeship," whereas the District of Delaware has 540 pending cases per judgeship. WOC Defs.' Mot. at 8 n.4. This is facially correct, but highly misleading. This district's caseload statistics have been, since the second half of 2014, significantly skewed due to the pendency of a very large multidistrict litigation (MDL) proceeding established here by the Judicial Panel on Multidistrict Litigation, specifically MDL 2545, *In re Testosterone Replacement Therapy Products Liability Litigation*, No. 14 C 1748 (N.D. Ill.) ("*In re TRT*"). As of the end of 2017, *In re TRT* was one of the four or five largest MDLs in the country in terms of the number of individual pending member cases. More to the point, as of March 30, 2018—the date referenced by the WOC defendants—over 55 percent of all civil cases pending

5

in this district were individual products liability cases that are part of *In re TRT*. But these cases are not distributed among the judges of this district. Rather, they are all supervised by a single judge. If these cases are taken out of the average caseload calculation—as they should be—the actual per-judge caseload in this district is actually far lower than in the District of Delaware, in which there is no pending MDL that involves a number of individual cases anywhere in the same ballpark as *In re TRT*.

As it happens, the undersigned judge is supervising *In re TRT*. And that proceeding certainly has involved a great deal of work. But it is simply not comparable to supervising 6,000-plus cases that are being individually litigated—because that is not how MDLs, or at least this particular MDL, are handled. Rather, the Court has supervised common discovery that applies to all cases; ruled on motions addressing common issues; selected and tried a number of "bellwether" (exemplar) cases; and supervised settlement negotiations. This has kept the undersigned judge busy, but it has not resulted in delays in the rest of the civil calendar. And as it happens, over the last six months, all of the remaining defendants in *In re TRT* have announced global settlements, the last just a week or so ago.

In sum, *In re TRT* and the over 6,000 individual cases associated with it cannot sensibly be included when evaluating relative per-judge civil caseloads. The bottom line is that transfer to the District of Delaware would not, as the WOC defendants contend, result in moving the case from a more congested to a less congested district; in fact, it would do exactly the opposite.[1]

---

[1] The WOC defendants also cite time-to-disposition and time-to-trial statistics, *see* WOC Defs.' Mem. at 9, but these are very blunt instruments, as they represent an average for all cases and say nothing about the particular type of case being considered. The Court

6

In addition, the WOC defendants have offered no basis to believe that transfer would result in any material savings of time and effort. It is true that the presence of other litigation in the proposed transferee district and any resulting potential for consolidation is a factor appropriately considered in determining whether to transfer a case. *See Coffey*, 796 F.2d at 220 ("related litigation should be transferred to a forum where consolidation is feasible."); *see also Heller Fin.*, 883 F.2d at 1293 ("trying related litigation together" is a relevant factor under section 1404(a)). But it is extremely unlikely that transferring the present case to the District of Delaware would result in a material decrease in the overall level of inconvenience or that it would advance the interests of justice by reducing the aggregate amount of judicial time devoted to the Marsh withdrawal liability litigation. First of all, irrespective of transfer, there will still be withdrawal liability litigation pending in this district—specifically, the case before Judge Chang. And in any event, the likelihood of consolidation in the District of Delaware following a transfer is at best iffy. There is no prospect of consolidation with the claim asserted by the Fund in the bankruptcy litigation, as that is being handled by a different court (the bankruptcy court) from the one that would hear the present case if it were transferred (the district court). And it is nearly as unlikely that the case could appropriately be consolidated with the WOC defendants' civil RICO suit, which was filed after the present case and involves significantly different issues, both legal and factual. The Fund does have a counterclaim for the same withdrawal liability pending against different defendants in the District of Delaware, but the WOC defendants have offered

---

assures the WOC defendants that it will set the case for trial on a date well within the 27-month interval that is the median in the District of Delaware. All parties should be prepared to set a 2019 trial date at the next status hearing.

7

no analysis that would suggest that consolidation with that case likely would take place after a transfer. The bottom line is that the parties will be litigating in multiple fora and before multiple judges even if the present case is transferred; transfer will not materially affect matters.

The WOC defendants also argue that consideration of the convenience of the parties and witnesses favors transfer. But they do not identify any likely witnesses and do not suggest that any of them reside in Delaware. Actually the WOC defendants' "convenience" contention is that it would be easier for the parties and witnesses to be involved in litigation in one district rather than two. WOC Defs.' Mot. at 10. Thus the point is essentially indistinguishable from their contention that transfer would enable consolidation and thereby serve the interests of justice. As the Court has indicated, the fact is that, one way or another, withdrawal liability *will* be litigated in two districts, given the pendency of the suit before Judge Chang. And as discussed earlier, the WOC defendants have failed to make the case that consolidation is at all likely if the present case is transferred.

**Conclusion**

For the reasons stated above, the Court concludes that the WOC defendants have failed to show that the District of Delaware is a "clearly more convenient" forum than the one the plaintiff chose and therefore denies their motion to transfer [dkt. no. 32].

Date: September 18, 2018

_____
MATTHEW F. KENNELLY
United States District Judge